UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID DUMANS, ANDREW DUMAS, | § | |
| JOHN REIGER, EDWARD ZEPEDA, JR., | § | |
| JEREMY SHEPPARD, and JOE | § | |
| RANGEL, | § | |
| | § | |
| **Plaintiffs,** | § | |
| v. | § | CIVIL ACTION NO. 4:08-cv-01359 |
| | § | |
| FORT BEND COUNTY, TEXAS, | § | |
| MICHAEL WILLIAM ELLIOTT, and | § | |
| BRENT MARSHALL HOLDEN, | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant Brett Holden's Motion for Summary Judgment. (Doc. No. 30.) For the following reasons, Defendant's Motion must be granted.

## I.    BACKGROUND

This case arises out of the formation of a roofing company. Plaintiffs David Dumas, Andrew Dumas, John Reiger, Jeremy Shepard, Edward Zepeda, Jr., and Joe Rangel[1] are former employees or subcontractors of Holden Roofing, Inc.[2] ("Holden Roofing"). In February 2006, Plaintiffs resigned from Holden Roofing and started a competing business, All States Roofing, Inc. ("All States").

---

[1] Plaintiff Rangel voluntarily dismissed his claims in March 2009 (Doc. No. 21.)
[2] Brett Holden is apparently incorrectly named as Brent Marshall Holden and the Court will refer to him as Brett Holden. (Doc. No. 40, at 1.) John Reiger's name is alternatively spelled Rieger in several filings, including the Grand Jury indictments. The Court will use Reiger, as it is the name listed on his Deposition transcript. Likewise, Jeremy Shepard's name is alternatively spelled Sheppard; the Court will use Shepard as this is the name in the Deposition transcript even though the Docket Sheet reflects the Sheppard spelling. Finally, Michael Elliott's name is alternatively spelled Elliot. The Court will use Elliott as this is the name assigned to pleadings he has filed in this action.

The formation of this new company spawned six legal actions: two state civil actions that were nonsuited, two criminal cases that were dismissed for lack of evidence, and two ongoing federal actions in the Southern District of Texas. In early February 2006, Plaintiffs filed a suit in Fort Bend County, seeking a declaration that their agreements not to compete with Holden Roofing were unenforceable.[3] Holden Roofing filed a separate suit in Fort Bend County seeking to enforce the non-compete contracts.[4]

Holden Roofing hired a private investigator to interview several customers that Plaintiffs and others had serviced while they were employed by Holden Roofing.[5] (Brett Holden Aff., Doc. No. 30, Ex. A ¶ 3.) Also in early February 2006, Brett Holden, chief executive officer of Holden Roofing, and Judith Mullins went to the Rosenberg Police Department to report Plaintiffs' conduct for independent investigation and provided the statements collected by the investigator to the assembled group, which included Elliott and other members of the District Attorney's Office and the Rosenberg Police Department. (*Id.* at ¶ 6; Judith Mullins Dep. 101:5-25, 102:13-103:19, Nov. 21, 2008.) The deposition testimony of one of the Plaintiffs suggests Shepard's belief that Elliott

---

[3] *David Dumas et al. v. Holden Roofing, Inc. et al.*, number 06-CCV-028676, County Court at Law Number Four of Fort Bend County, Texas. The case was non-suited in May 2008.

[4] *Holden Roofing, Inc. v. All States Roofing, Inc. et al.*, number 06-CCV-147963, 400th Judicial District, Fort Bend County, Texas. This action was also non-suited without prejudice in December 2007 to allow Holden Roofing to pursue these claims in a federal action now pending before Magistrate Judge Johnson. *Holding Roofing, Inc. v. All States Roofing Inc., et al.*, H-06-3406 (S.D. Tex.) ("Federal Case 1").

[5] Holden submits statements gathered by Holden Roofing's investigator, but Plaintiffs move to strike them as unsworn, unsigned affidavits that are hearsay. (Doc. No. 30, Exs. C-H.) Holden responds that these statements are not offered for the truth of the matter asserted, but, rather, to demonstrate that Holden had information which led to a reasonable belief that there was probable cause to complain of Plaintiffs' conduct and that Holden did not act maliciously when he reported Plaintiffs' conduct to the appropriate law enforcement agency. Holden offers an affidavit authenticating the documents as the investigator's actual statements. *See* (Doc. No. 30, Ex. A, ¶¶ 4-5.), FED. R. EVID. 901. The Court agrees that these documents are not submitted for the truth of the matter asserted and, therefore, the hearsay objection fails.

and Holden went together to the Rosenberg Police Department to file the complaint against Plaintiffs.[6] (Shepard Dep. 130:24-131:4, Aug. 26, 2008, Doc. No. 38, Ex. D.)

The Assistant District Attorney for the 268th Judicial District of the State of Texas, Fort Bend County, Michael Elliott, later brought two separate sets of criminal charges ("the state criminal cases") against Plaintiffs.[7] Holden made a $1,000 personal contribution to Elliott's spouse, a candidate for political office, a few days before Elliott pursued the criminal investigation against Plaintiffs; at some point, Holden also let Elliott's spouse use his Hummer in a political parade. (Brett Holden Dep. 136:22-138:12, 137:13-138:12, 139:23-141:8, 270:10-271:13, Dec. 3, 2008, Doc. No. 38, Ex. B.) Holden performed work on the Elliotts' roof several years before Elliott filed charges against Plaintiffs; the roofing job was perhaps the first occasion for Holden to meet Elliott and his spouse. (*Id.* at 140:15-141:8.) After a grand jury indicted seven men, including Plaintiffs, the District Attorney's office dropped all of the charges in the state criminal case on or about November 2, 2007, because of insufficient evidence. Neither Holden nor anyone associated with Holden Roofing appeared before the grand jury or participated in the decision to refer the matter to the District Attorney. (*Id.* at ¶ 8.)

Holden Roofing filed Federal Case 1 in the Southern District of Texas[8] and, after the criminal charges were dropped, Plaintiffs were granted leave to amend to add a common law claim for malicious prosecution against Holden. They also attempted to file a § 1983 counter-claim against Fort Bend County or Elliott, but leave was denied

---

[6] The deposition excerpts provided suggest that, at an earlier point in the deposition, Shepard explained that he thought Holden and Elliott went together to the police. In the excerpt provided, Shepard responds to a question regarding his knowledge of any facts suggesting a conspiracy beyond the allegation that Holden and Elliott went together to the police.

[7] Plaintiffs allege that Holden Roofing retained Elliott's law partner in civil practice to represent its interest in the county case, but Plaintiffs provide no summary judgment evidence to support this allegation.

[8] Federal Case 1 involves purported violations of the civil Racketeer Influenced and Corrupt Organizations Act and the Lanham Act, arising from Plaintiffs' conduct while establishing All States Roofing.

because, as the Court explained, "to add a governmental entity and an assistant district attorney, with concomitant issues of immunity, respondeat superior liability, and county liability would stop this case in its tracks." (C.A. No. H-06-3406, Doc. No. 77, Johnson, Magistrate Judge, presiding).

In this action, Plaintiffs bring claims against Defendant Brett Holden for malicious criminal prosecution, malicious civil prosecution, and tortious inference with prospective business relationships. Assuming that, consistent with their statement of jurisdiction (Pl. Am. Compl. ¶ 7), Plaintiffs did intend to bring a § 1983 claim as well as a common law claim for malicious prosecution, this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367.

## II. SUMMARY JUDGMENT

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.* The failure to respond to a motion for summary judgment does not entitle the movant to summary judgment if the

movant has failed to demonstrate that no issues of material fact remain. *See, e.g., Whitt v. Stephens County*, 529 F.3d 278, 282 (5th Cir. 2008); *John v. State of La. (Bd. of Trustees for State Colleges and Universities et al.)*, 757 F.2d 698, 708 (5th Cir. 1985). Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. FED. R. CIV. P. 56(e)(1); *See, e.g., Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996), *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts.'" (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## III. SECTION 1983 ACTION

Holden contends that Plaintiffs have failed to state a § 1983 claim because they have failed to demonstrate his participation in any plan to violate Plaintiffs' civil rights, and the sole basis of their § 1983 claim is malicious prosecution. Plaintiffs respond that there is some evidence that Holden and Elliott conspired to violate Plaintiffs' civil rights by procuring baseless criminal charges against them and that Holden "trumped up" the evidence" so that it appeared there were grounds to proceed with a criminal investigation and prosecution. Plaintiffs rely, in part, on the allegedly long-term personal relationship between Elliott and Holden to suggest that Holden improperly influenced Elliott to procure criminal charges against Plaintiffs. They now contend that they were unlawfully arrested and detained twice so that their civil rights were violated by the alleged conspiracy between Elliott and Holden.

### 1. Conspiracy

Holden argues that Plaintiffs have not established that a conspiracy exists between Holden and Elliott because they did not commit an illegal act to violate any of Plaintiffs' constitutional rights. Holden did make contributions to the political campaign of Elliott's spouse near or during the time in which Elliott pursued the criminal case against Plaintiffs but Holden claims that, even with these contributions, Plaintiffs have no evidence of conspiracy.

Plaintiffs aver that Holden and Elliott had friendly and business relations for many years, but provide no summary judgment evidence of this longstanding relationship beyond Holden's testimony via deposition that he "knew" the Elliotts and that he performed work on their house at one point. Plaintiffs also aver that Elliott and Holden denied that they had any personal relationship based on Shepard's recollection of an unspecified newspaper article to this effect. (Jeremy Shepard Dep. 130:8-23, Aug. 26, 2008, Doc. No. 38, Ex. D.) Another Plaintiff testifies via deposition that Holden explained to him that Elliott and Holden conspired to thwart the criminal investigation of Holden's ex-wife. (Andrew Dumas Dep. 113:19-117:7, Feb. 18, 2009, Doc. No. 38, Ex. E.)

To establish conspiracy, "a plaintiff must show that the defendants agreed to commit an illegal act" and "mere conclusory allegations of conspiracy cannot, absent reference to material facts" constitute grounds for § 1983 relief. *Dayse v. Schuldt*, 894 F.2d 170, 173 (5th Cir. 1990) (quoting *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982)).

Here, the summary judgment evidence, including deposition testimony, establishes that Holden presented information to the Rosenberg Police Department, the

police department investigated, and a grand jury returned an indictment as to all of the current Plaintiffs. (Holden Aff. ¶¶ 6-7; Doc. No. 30, Exs. I-1, I-2.) The charges against Plaintiffs were later dropped for insufficient evidence. (Doc. No. 30, Exs. J-1, J-2.) Holden contends, and Plaintiffs do not dispute, that Holden did not appear before the grand jury. Holden avers, and Plaintiffs do not contest, that he did not even know what evidence or information the law enforcement authorities provided to the grand jury. The summary judgment evidence does not show that Elliott and Holden agreed to commit an illegal act or that they were engaged in a conspiracy.

At most, the deposition testimony demonstrates that Holden and Elliott knew each other and that Holden made contributions to Elliott's spouse at an unseemly time. One Plaintiff alleges, based on statements purportedly from Holden, that Holden and Elliott conspired to thwart the criminal investigation of Holden's ex-wife—not the criminal investigation of Plaintiffs. Plaintiffs have failed to defeat Holden's evidence that he and Elliott did not conspire to commit any illegal act that lead to a deprivation of Plaintiffs' civil rights. Evidence that Holden contributed to Elliott's spouse's campaign is not tantamount to a material fact regarding a conspiracy to commit an illegal act to deprive Plaintiffs of their civil rights.

## 2. Malicious Prosecution is Not Actionable under 1983

In the alternative, even if Plaintiffs could establish such a conspiracy, Holden contends that Plaintiffs' sole § 1983 claim is one for malicious prosecution, and the Fifth Circuit has held that, without evidence of unlawful detention beyond initial arrest, no § 1983 claim exists for malicious prosecution.

There is no right under the due process clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause. *See Albright v. Oliver*, 510 U.S. 266, 274 (1994) (holding, by a plurality, that the Fourth Amendment is the proper framework for addressing pretrial deprivations of liberty). The Fifth Circuit has explained that the initiation of criminal charges without probable cause does not give rise to a federal claim for malicious prosecution under § 1983. *See Castellano v. Fragozo*, 352 F.3d 939, 953-54 (5th Cir. 2003) (en banc), *cert. denied*, 543 U.S. 808 (2004) ("The initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection .... Regardless, they are not claims for malicious prosecution and labeling them as such only invites confusion."). Violations of the Fourth Amendment such as unlawful arrest or detention without probable cause may be properly asserted pursuant to § 1983. *See Shields*, 389 F.3d at 150; *Flores v. City of Palacios*, 381 F.3d 391, 403-04 (5th Cir. 2004) (evaluating § 1983 claims of excessive force and unlawful arrest under the Fourth Amendment).

### 3. Plaintiffs' have failed to create a material fact issue over the existence of a § 1983 claim for false arrest or wrongful detention

An independent intermediary, such as a grand jury or magistrate, breaks the chain of causation for false arrest such that even an officer who acted with malice in procuring the warrant or the indictment is not liable. *See, e.g. Shields v. Twiss*, 389 F.3d 142, 150 (5th Cir. 2004); *Taylor v. Gregg*, 36 F.3d 453, 456-57 (5th Cir. 1994); *Hand v. Gary*, 838 F.2d 1420, 1427-28 (5th Cir. 1988). If, however, the officer withholds relevant information or provides false information, a neutral intermediary may not break the chain of causation. *Taylor*, at 457 (holding that the chain was broken when the plaintiffs made bare assertions that the officer's report tainted the intermediaries' decisions but they did

8

not show that the magistrate or grand jury relied on the report or the officer's testimony). *See also Shields*, 389 F.3d at 150 (holding that the plaintiff's conclusory allegations that information was withheld from the grand jury are insufficient to create a fact issue sufficient to deny summary judgment).

Plaintiffs admit that they have no evidence that Holden or any other party provided false information or documents to the grand jury or to any law enforcement agency. (David Dumas Dep. 124:18-125:19, 126:22-24, Sept. 4, 2008, Doc. No. 30, Ex. L; Andrew Dumas Dep. 131:22-132:23, Feb. 18, 2009, Ex. M; John Reiger Dep. 113:1-114:18, 115:20-24, July 10, 2008, Ex. N; Shepard Dep. 113:9-20, 14:1-115:16, Aug. 26, 2008, Ex. P.) Zepeda alleges that Holden provided false documents to the District Attorney but admits that he has no personal knowledge of these documents: he assumes that the documents must have been false because he was allegedly wrongly arrested and charged. (Edward Zepeda Dep. 73:5-75:22, July 10, 2008, Doc. No. 30, Ex. O.) Plaintiffs also claim that the Rosenberg Police Department did not interview any witnesses but rather Holden's private investigator interviewed them. Moreover, Plaintiffs assert that the detectives repeatedly told Elliott that there was no evidence to support the criminal charges but Elliott continued to pursue the matter. Plaintiffs provide no competent evidence to support these contentions. Holden testifies via affidavit that neither he nor anyone else associated with Holden Roofing had any further involvement with the decision to prosecute Plaintiffs beyond presenting the matter to the Rosenberg Police Department. (Holden Aff. ¶ 8.) Consequently, even if Plaintiffs did allege a § 1983 action based on false arrest or wrongful detention without probable cause, without any evidence to refute Holden's affidavit testimony that he did not provide wrongful information or

tamper with the grand jury in any way, no material fact issue exists. The Court must grant Defendant's Motion as to the § 1983 claim.

## IV. COMMON LAW MALICIOUS CRIMINAL PROSECUTION

Under Texas law, a plaintiff alleging malicious prosecution must establish: (1) the commencement of a criminal prosecution against him; (2) that the defendant caused the prosecution to be commenced; (3) termination of the prosecution in his favor; (4) his innocence; (5) the absence of probable cause for the proceeding; (6) malice in filing the charge; and (7) damages. *Shields v. Twiss*, 389 F.3d at 152 (5th Cir. 2004) (citing *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997)).

If the decision to prosecute is left to another, such as a law enforcement official or a grand jury, a person may not be liable for common law malicious prosecution unless that person knowingly provides false information and that information caused the criminal prosecution. *See, e.g., In re Bexar County Criminal Dist. Attorney's Office*, 224 S.W.3d 182, 185 (Tex. 2007); *King v. Graham*, 126 S.W.3d 75, 76 (Tex. 2003) (citing *Browning-Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 203 (Tex. 1994)).

Plaintiffs provide no summary judgment evidence that the prosecutor or grand jury acted on false information. Plaintiffs explain that the mental state of the person who reports the alleged crime is a material fact and that the personal relationship between Holden and Elliott suggests that Holden improperly influenced Elliott to procure baseless criminal charges. In addition, they note that a Holden Roofing customer's roof was repaired after she gave information to Holden's private investigator. Plaintiffs aver that, when the evidence is considered in the light most favorable to them, the personal relationship between Holden and Elliott as well as the mysterious repair of a customer's

roof after she spoke with Holden's private investigator, suggests that Holden was seeking to supply Elliott with information to procure baseless charges against Plaintiffs. Plaintiffs provide the same facts about the relationship between Holden and Elliott to suggest that Holden acted with malice to procure charges against them.

Here, however, as stated in the context of the purported § 1983 action, none of the Plaintiffs is aware of false information that Holden provided to any law enforcement agency or the grand jury or that such false information was the basis for the charges against them. Because Holden demonstrated that no material fact issue exists and Plaintiffs have failed to rebut that showing, Holden's Motion for Summary Judgment must be granted as to the common law malicious criminal prosecution claim.

## V. COMMON LAW MALICIOUS CIVIL PROSECUTION

To prevail in a suit alleging malicious prosecution of a civil claim, the plaintiff must establish: (1) the institution or continuation of civil proceedings against the plaintiff; (2) by or at the insistence of the defendant; (3) malice in the commencement of the proceeding; (4) lack of probable cause for the proceeding; (5) termination of the proceeding in plaintiff's favor; and (6) special damages. *Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996) (citing *James v. Brown*, 637 S.W.2d 914, 918 (Tex. 1982)).

Holden contends that the civil litigation that is the subject of Plaintiffs' claims was instituted by Holden Roofing, not Holden, and Holden Roofing is not a party to this litigation. He also contends that the civil litigation did not terminate in Plaintiffs' favor because the case was non-suited. An agreed dismissal is not an adjudication of the rights of the parties—it puts them in the position they would have been had the litigation never

commenced. *Ashpole v. Millard*, 778 S.W.2d 169, 171 (Tex. App.—Houston [1 Dist.]

1989, no writ); *Crofts v. Court of Civil Appeals for Eighth Supreme Judicial Dist.*, 362

S.W.2d 101, 104 (Tex. 1962). A voluntary nonsuit is not a termination in the plaintiff's

favor. *See, e.g., Duzich v. Advantage Finance Corp.*, 395 F.3d 527, 530 (5th Cir. 2004)

(citing *KT Bolt Mfg. Co. v. Texas Elec. Coops., Inc.*, 837 S.W.2d 273, 275 (Tex. App.—

Beaumont 1992, writ denied). Plaintiffs do not respond to these arguments. Because of

the foregoing and the lack of any facts provided to create a material fact issue over any of

the elements of this claim, Holden's Motion must be granted.

## VI. TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

To establish a cause of action for tortious interference with prospective business

relationships, a plaintiff must show that (1) there was a reasonable probability that the

parties would have entered into a business relationship; (2) the defendant committed an

independently tortious or unlawful act that prevented the relationship from occurring; (3)

the defendant either acted with a conscious desire to prevent the relationship from

occurring or knew the interference was certain or substantially certain to occur as a result

of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the

defendant's interference. *Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d

469, 475 (Tex. App.—Houston [1 Dist.] 2006, pet. denied) (internal citations omitted).

*See also Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001).

In responses to interrogatories, Plaintiffs provide sketchy details of contracts they

allege they would have entered into but for Defendants' actions. For example, Shepard

contends that he would have performed the "Marty Hopkins job." (Shepard Ans. to Pl. 2d

Set of Interrog. #2, Doc. No. 30, Ex. Q-1.) Zepeda alleges that he was thwarted from

performing "a lot of jobs" but could only explain that one of these jobs was in Missouri. (Zepeda Dep. 78:14-79:1, 80:7-11.) Other Plaintiffs responded that "[n]umerous individuals … have contacted David Dumas, saying they would hire All State's Roofing if issues with Holden were resolved." (David Dumas Ans. to Pl. 2d Set of Interrog. #11, Doc. No. 30, Ex. Q-2; Andrew Dumas Ans. to Pl. 2d Set of Interrog. #11, Ex. Q-3; Edward Zepeda, Ans. to Pl. 2d Set of Interrog. #11, Ex. Q-4; John Reiger, Ans. to Pl. 2d Set of Interrog. #11, Ex. Q-5.) Testifying via deposition, however, David Dumas conceded that he could not provide the name of a job anywhere that All States Roofing could have done but for the actions of Holden or Holden Roofing and that no person or business told David Dumas that All States Roofing would be hired if issues were resoled with Holden. (David Dumas Dep. 245:23-246:3; 247:16-248:14.) Consequently, given the lack of evidence of any contract with which Holden allegedly interfered and given Plaintiffs' failure to respond to Holden's contention that there were no such prospective contracts, the Court must grant Holden's Motion as to this claim.

## IV.    CONCLUSION

Defendant Holden's Motion for Summary Judgment, (Doc. No. 30), is **GRANTED.**    Plaintiffs' claims against Defendant Holden are **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED**.

**SIGNED** this 29 day of June, 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

13